# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT COPE, #GY8804, | |
| Plaintiff, | CIVIL ACTION NOS. 3:15-cv-01876 |
| v. | (MARIANI, J.) |
| | (SAPORITO, M.J.) |
| L.T. REEDY P., et al., | |
| Defendants. | |

## *REPORT AND RECOMMENDATION*

This is a *pro se* prisoner civil rights action, which comes before the Court on a motion for summary judgment (Doc. 52) by the defendants. For the reasons that follow, it is recommended that the motion be granted in part and denied in part.

## I.   STATEMENT OF THE CASE

This action was initiated by Cope by the filing of a *pro se* complaint (Doc. 1) on September 29, 2015. The named defendants include Superintendent Delbalso, Secretary Wetzel, Lieutenant Reedy, Lieutenant Geisinger, Unit Manager Ciocca, Sergeant Koskakowski, CO Toluba, CO Wintersteen, and CO Martin. The complaint seeks a declaratory judgment, and compensatory and punitive damages. Cope filed an amended complaint (Doc. 11) on November 10, 2015.

In the amended complaint (Doc. 11), Cope alleges that various SCI-Retreat prison officials violated his Eighth and Fourteenth Amendment rights in connection with a July 2, 2015, incident in which Cope was assaulted by another inmate, Michael Sipes. At the time of the assault, Cope was an inmate at SCI-Retreat.

On the evening of July 2, 2015, Cope was assaulted by inmate Sipes, in a cell occupied by Sipes and which Cope was directed to occupy despite his request to the contrary. As a result of the assault, Cope sustained fractured ribs, multiple facial trauma, and body contusions. Immediately following the assault, Sipes was transferred to the prison's Restrictive Housing Unit ("RHU"). Cope was examined, treated, and photographed.

Cope filed grievance No. 574358 and grievance appeals regarding the failure of Wintersteen, the compound sergeant (presumably Kosakowski), Ciocca, and the corrections officers and staff to protect him from being assaulted by Sipes. Although Cope asserts in conclusory fashion that he exhausted all available administrative remedies, it was unclear from the facts articulated in the amended complaint whether Cope fully and properly presented to prison officials all of the claims raised against the named defendants in this action.

The defendants filed their answer with affirmative defenses (Doc. 21) on February 1, 2016. The defendants have now moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 52). The motion is fully briefed and ripe for disposition.

## II.   LEGAL STANDARD

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial

responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out

facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

### B. Sua Sponte Dismissal Standard

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it is "frivolous" or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions brought *in forma pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). *See generally Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D. Pa. 2008) (summarizing

prisoner litigation screening procedures and standards).

An action is "frivolous where it lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Thomas v. Barker*, 371 F. Supp. 2d 636, 639 (M.D. Pa. 2005). To determine whether it is frivolous, a court must assess a complaint "from an objective standpoint in order to determine whether the claim is based on an indisputably meritless legal theory or clearly baseless factual contention." *Deutsch v. United States*, 67 F.3d 1080, 1086 (3d Cir. 1995) (citing *Denton v. Hernandez*, 504 U.S. 25, 34 (1992)); *Thomas*, 371 F. Supp. 2d at 639. Factual allegations are "clearly baseless" if they are "fanciful," "fantastic," or "delusional." *See Denton*, 504 U.S. at 32–33. "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* at 33. A district court is further permitted, in its sound discretion, to dismiss a claim "if it determines that the claim is of little or no weight, value, or importance, not worthy of serious consideration, or trivial." *Deutsch*, 67 F.3d at 1089.

The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same

as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III.  DISCUSSION

Defendants Reedy, Geisinger, Toluba, Martin, Wetzel, and Delbalso, have moved for summary judgment with respect to Cope's claims on the grounds that Cope failed to exhaust administrative remedies and that there is no evidence to establish personal involvement with respect to them. Defendants Ciocca, Wintersteen, and Kosakowski argue they took reasonable measures to abate the harm, and they are entitled to qualified immunity.

Cope has brought this federal civil rights action under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, the plaintiff must establish that the defendants, acting under color of state

law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

Here, Cope asserts several civil rights claims stemming from the July 2, 2015, incident. First, he claims that the defendants violated his Eighth Amendment rights by failing to prevent Sipes from assaulting him. Second, Cope claims that the defendants violated his Fourteenth Amendment due process rights by refusing his request that Sipes be charged criminally for the assault. Third, Cope claims the defendants were negligent by placing him in a cell with an inmate who they knew or should have known had a history of predatory behavior. Finally, Cope seeks to hold Superintendent Delbalso and Secretary Wetzel vicariously liable for the allegedly unconstitutional conduct of their subordinates.

### A. Fourteenth Amendment Failure to Prosecute Claim

As a threshold matter, we begin with Cope's claim that the defendants violated his Fourteenth Amendment due process rights. Cope claims that the defendants deprived him of his due process rights by

failing to criminally prosecute inmate Sipes for the assault.[1] This claim should be dismissed *sua sponte* with prejudice as legally frivolous and for failure to state a claim.

In his amended complaint, Cope has alleged that Lieutenant Serbin refused his request that inmate Sipes be criminally prosecuted. He has further alleged that Superintendent Delbalso failed to enforce a DOC policy that purportedly provides that an inmate may press charges against another inmate who commits a crime against him. But regardless of prison officials' response, it is well-established that "there is no constitutional right to the investigation or prosecution of another." *Sanders v. Downs*, 420 Fed. App'x 175, 180 (3d Cir. 2011) (per curiam); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation."). Because this claim is based on an indisputably meritless

---

[1] The amended complaint is not a model of clarity, but Cope appears to direct this claim primarily at defendant Delbalso and Lieutenant Serbin, who is not a named party defendant in this action. He also appears to seek to hold Secretary Wetzel, and possibly others, liable on a *respondeat superior* theory of liability.

legal theory, it is legally frivolous. *See Haxton v. State Farm Mut. Auto Ins. Co. Bd. of Dirs.*, No. 3:13cv485/MCR/EMT, 2014 WL 3586550, at \*5 (N.D. Fla. July 21, 2014); *Brunson v. Fed. Bureau of Investigation*, C/A No. 3:12-152-JFA-PJG, 2012 WL 2873834, at \*4 (D.S.C. June 13, 2012).

Accordingly, it is recommended that Cope's claim that his Fourteenth Amendment due process rights were violated by the defendants' refusal to prosecute another inmate be dismissed with prejudice as legally frivolous and for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), § 1915(e)(2)(B)(ii), § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1).

### B. Exhaustion of Administrative Remedies

Defendants Reedy, Geisinger, Toluba, Martin, Wetzel, and Delbalso claim they are entitled to summary judgment on Cope's remaining federal civil rights claims because Cope failed to exhaust his administrative remedies with respect to them. In particular, they contend that Cope failed to properly exhaust available administrative remedies because he failed to name these particular defendants in his inmate grievance papers.

Before bringing a § 1983 action concerning prison conditions, a prisoner must first exhaust all available administrative remedies. 42

U.S.C. § 1997e(a); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). "[I]t is beyond the power of this court . . . to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). Moreover, § 1997e(a) requires "proper" exhaustion of administrative remedies, meaning strict compliance with DOC deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89–95 (2006). "A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." *McKinney v. Kelchner*, No. 1:CV-05-0205, 2007 WL 2852373, at *3 (M.D. Pa. Sept. 27, 2007) (citing *Spruill v. Gillis*, 372 F.3d 218, 227–32 (3d Cir. 2004)). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by [§ 1997e(a)], but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88) (citation omitted); *see also Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) ("Section 1997e(a) does not

delineate the procedures prisoners must follow."). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not [§ 1997e(a)], that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. "The only constraint is that no prison system may establish a requirements inconsistent with the federal policy underlying § 1983 and § 1997e(a)." *Strong*, 297 F.3d at 649. Thus, it follows that "grievances must contain the sort of information that the administrative system requires." *Id*. But,

> if prison regulations do not prescribe any particular content for inmate grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. . . . [T]he grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need to do is object intelligibly to some asserted shortcoming.

*Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quoting *Strong*, 297 F.3d at 650).

In adopting DC-ADM 804 (Doc. 55, at 74–108), the DOC has established a multi-stage administrative remedy process through which an inmate may seek formal review of a wide range of issues, procedures, or events that may be of concern to an inmate. *See Adams v. Giroux*, CIVIL

ACTION NO. 1:15-cv-01321, 2016 WL 8229205, at *6 (M.D. Pa. Dec. 15, 2016). "DC-ADM 804 provides a three-tiered grievance process: (1) an initial review by a grievance officer; (2) an appeal to the facility superintendent; and (3) an appeal to the statewide chief grievance officer." *Id.* at *6. (*See also* Doc. 55, at 77–85, 88–96). DC-ADM 804 sets forth various substantive and procedural requirements for inmate grievances, including requirements that the initial grievance "identify individuals directly involved in the event(s)," that it "specifically state any claims . . . concerning violations of [DOC] directives, regulations, court orders, or other law," and that it specifically request any "compensation or other legal relief normally available from a court." (*Id.* at 78).

The defendants contend that Cope failed to properly exhaust his administrative remedies with respect to defendants Reedy, Geisinger, Toluba, Martin, Wetzel, and Delbalso because his grievance papers failed to mention any of them by name.[2] But the prison grievance policy requires

---

[2] Specifically, the defendants contend that DC-ADM 804 requires an inmate to "identify any persons who may have information that could be helpful in resolving the grievance." (Doc. 54, at 27–28 (brief in support of summary judgment) (citing DC-ADM Section VI, Part A.7); *see also* Doc. 55 ¶ 5 (Shambaugh Decl.) (citing DC-ADM Section 1A, ¶11)). But while a previous version of the policy may have said that, *see, e.g.*, *Spruill*, 372

*(continued on next page)*

only that the inmate "identify individuals *directly* involved in the event(s)." (*Id.* at 78 (emphasis added)). None of these defendants have been alleged to have had any direct involvement in the assault that gave rise to Cope's claims in this case. Rather, Cope claims that these defendants failed to take appropriate steps to protect him in advance of this assault by another inmate. The only prison staff members *directly* involved in the facts alleged in Cope's grievance papers are those named in them—defendants Winterstein, Kosakowski, and Ciocca—and none of them is directly involved in the assault itself. Each of the other defendants is alleged in this action to have had an indirect role, at best.

### C. Lack of Personal Involvement

Alternatively, the defendants Reedy, Geisinger, Martin, Wetzel, and Delbalso argue that they are entitled to summary judgment on the ground that they had no personal involvement in the alleged failure to protect Cope from Sipes's attack.

"Civil rights claims cannot be premised on a theory of *respondeat*

---

F.3d at 234 (quoting DC-ADM 804, Part VI.A.1.d), the current version submitted as evidence in support of summary judgment in *this case* does not. (*See* Doc. 55, at 78 ("The inmate shall identify individuals directly involved in the event(s).").

*superior*. Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As previously explained by the Third Circuit:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

There is no evidence whatsoever in the record before the Court to suggest any personal involvement by defendants Geisinger and Wetzel.

Lieutenant Reedy was the grievance officer who investigated and initially denied Cope's grievance, and Superintendent Delbalso reviewed Reedy's determination and denied Cope's grievance appeal. Cope cites no evidence to suggest any other role played by either of these two defendants.[3] It is well-settled that if a prison official's only involvement is

---

[3] We note that Lieutenant Reedy was among the correctional officers who responded immediately after Cope was assaulted. There is nothing to

*(continued on next page)*

investigating or ruling on an inmate's grievance after the incident giving rise to the grievance has occurred, there is no personal involvement on the part of that official. *See Rode*, 845 F.2d at 1208; *see also Brooks v. Beard*, 167 Fed. App'x 923, 925 (3d Cir. 2006) (per curiam) (characterizing such a claim as legally frivolous). "[T]he mere fact that an official receives and reviews a letter or grievance appeal is insufficient to establish personal involvement (*i.e.*, failure to respond or react does not establish that the official endorsed or acquiesced in the conduct at issue)." *Hennis v. Varner*, Civil Action No. 12-646, 2014 WL 1317556, at *9 (W.D. Pa. Mar. 31, 2014).

The defendants contend that Correctional Officer Martin did not work on the day when Cope was assaulted by inmate Sipes. Cope, however, has cited evidence—his own unsworn declaration (Doc. 64) and an unsworn declaration by another inmate (Doc. 63, at 16)—that specifically describe interaction between Cope and Officer Martin on that day, including in particular an exchange in which Cope advised Martin that Sipes had threatened him. Viewing this evidence in the light most favorable to the non-moving plaintiff, Cope has established a genuine

---

suggest that Reedy had any involvement prior to Cope's calls for help. Cope has not cited evidence that he or anyone else informed Reedy before the assault that inmate Sipes had threatened Cope.

dispute of material fact with respect to Martin's personal involvement in events underlying Cope's failure-to-protect claim.

Accordingly, it is recommended that summary judgment be granted in favor of defendants Secretary Wetzel, Superintendent Delbalso, Lieutenant Reedy, and Lieutenant Geisinger, and against the plaintiff with respect to the plaintiff's Eighth Amendment claims, brought under 42 U.S.C. § 1983.

### D. Failure-to-Protect Claims

Cope claims that the remaining defendants violated his Eighth Amendment right against cruel and unusual punishment by failing to protect him from the substantial risk of serious harm posed by inmate Sipes. Cope claims that, at the time of his cell transfer, he advised defendants Officer Wintersteen, Officer Martin, Officer Toluba, and Sergeant Kosakowski multiple times[4] that he had been threatened with physical harm by inmate Sipes. Cope argues that defendant Unit Manager Ciocca should also be held liable for failure to protect because Ciocca was familiar with inmate Sipes and his assaultive history when he assigned

---

[4] To be precise, however, Officer Toluba was only present for one of these several encounters in which Cope advised Kosakowski that he had been threatened by Sipes and requested a different cell assignment.

Cope to move into the same cell as Sipes.

The Eighth Amendment imposes "a duty upon prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)) (internal quotation marks omitted). "[P]rison administrators 'are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 668 (3d Cir. 1988) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). That said, "a prison custodian is not the guarantor of a prisoner's safety." *Freedman v. City of Allentown, Pa.*, 853 F.2d 1111, 1115 (3d Cir. 1988). To establish a failure to protect claim, an inmate must demonstrate that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm"; and (2) the prison official acted with "deliberate indifference" to his health and safety. *Farmer*, 511 U.S. at 834. To be deliberately indifferent, a prison official must both "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. This standard is subjective, not objective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-*

*Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001).

In his unsworn declaration, Unit Manager Ciocca stated that it was his decision to move Cope from A-Unit to B-Unit for stability rating purposes. (Doc. 55, at 61). Cope was one of 60 to 70 inmates that had to be moved. (*Id.*). Ciocca had known Sipes for seven years and he knew that Sipes was a racist with a history of confrontations with non-whites. (*Id.*). Ciocca chose to house Cope with Sipes because Cope is white. (*Id.*).

Cope has cited facts in his declaration in opposition to summary judgment to demonstrate the existence of a genuine dispute of material fact. (*See* Doc. 64). For example, in his declaration, Cope explained that, on July 2, 2015, he was told by prison officials on A-block that Ciocca had ordered that he be moved from A-block to B-block. (*Id.* ¶¶ 4–5). Cope was instructed by a correctional officer to pack his personal property for the move, and Cope complied with the order. (*Id.* ¶¶ 4, 6). Upon his arrival on B-block, Officer Wintersteen informed Cope that he was being placed in a cell with inmate Sipes. (*Id.* ¶7). Cope has stated in his declaration that he then informed Wintersteen that he did not want to be placed in the same cell as Sipes because he feared Sipes would assault him, and that Sipes had previously made "open threats" to him. (*Id.* ¶8). Wintersteen

reportedly contacted Sergeant Kosakowski and informed him that Cope did not want to be placed in the same cell as Sipes. (*Id.* ¶9). When Kosakowski arrived and asked Cope why he did not want to be celled with Sipes, Cope advised him that Sipes made "open threats" to him that he would assault Cope because of the nature of Cope's conviction.[5] (*Id.* ¶10). Kosakowski went and talked to Sipes; upon his return, he told Cope that "everything was ok" and instructed him to move into the cell with Sipes. (*Id.* ¶11).

Upon his arrival at Sipes's cell, Cope has stated that Sipes told him that he had spoken with his sister on the phone earlier that day and learned the nature of Cope's conviction, and that Sipes threatened to hurt him if he moved into the cell. (*Id.* ¶12). Cope immediately returned to the "Officers Bubble" and spoke with Officer Wintersteen and Officer Martin about this encounter with Sipes and the fact that he felt threatened. (*Id.* ¶13). Wintersteen and Martin contacted Sergeant Kosakowski once again. (*Id.* ¶14). When Kosakowski arrived to speak with Cope, Cope adised him that inmate Sipes had threatened him. (*Id.*). Kosakowski spoke with Sipes a second time, and, upon his return, he assured Cope that Sipes would not

---

[5] Cope was serving a prison sentence for a sexual offense.

do anything to Cope. (*Id.* ¶15). Cope asked if he could move into a different cell, to which Kosakowski responded by advising Cope that either he had to move into the cell with Sipes or he would be placed in the restrictive housing unit ("RHU"). (*Id.* ¶ 17). Kosakowski then gave Cope a direct order to move his personal property into the cell with Sipes, and Cope complied. (*Id.* ¶ 18).

In his unsworn declaration, Kosakowski has admitted that he spoke with Cope and Sipes "multiple times" on July 2, 2015. (Doc. 55, at 118). He admitted that he offered to place Cope in protective custody, which is located in the RHU, but Cope declined. (*Id.* at 118–19). Kosakowski's declaration is otherwise silent regarding the substance of their discussions. (*Id.*).

The assault occurred shortly before 9:00 p.m. after the block was locked-down for the evening. (Doc. 64 ¶19). Cope screamed for help, and Kosakowski, Toluba, Reedy, and Geisinger came to the plaintiff's aid, pulling him out of the cell and escorting him to the medical department for examination and treatment. (*Id.* ¶21). In his declaration, Cope states that he was treated for bruises to his face and eyes, and was sent for an echocardiogram for blunt force trauma to his chest area. (Id. ¶22).

At this stage of the proceedings, and after review of the submissions, it is clear that Cope expressed resistance to being placed in the same cell as Sipes. There is a factual dispute as to whether Cope informed prison officials of Sipes's threats to inflict harm upon him. Further, these defendants were aware of Sipes's racist demeanor and his prior assaultive history. Thus, we find that there is a genuine dispute of material fact, which precludes the entry of summary judgment in their favor.

Accordingly, it is recommended that summary judgment be denied with respect to the plaintiff's Eighth Amendment claims against defendants Wintersteen, Martin, Toluba, and Kosakowski, brought under 42 U.S.C. § 1983.

### E. Qualified Immunity

In the alternative, the remaining defendants contend that they are entitled to qualified immunity with respect to Cope's Eighth Amendment claims.

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

(internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325–26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in party by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier*

prongs should be addressed first). As discussed above, there exists a genuine dispute of material fact on the merits of this claim. Moreover, it is beyond cavil that the law is clearly established that corrections officers have a legal obligation to take reasonable measures to protect inmates from assaults by other prisoners—indeed, the defendants' brief addresses only the first *Saucier* prong, apparently conceding that the constitutional right at issue was clearly established at the time.

Accordingly, it is recommended that summary judgment be denied with respect to the defendants' qualified immunity defense.

### F. State-Law Negligence Claim

Cope also asserts a state common law negligence claim against the defendants, claiming that they were negligent in placing him in a cell with inmate Sipes because it was reasonably foreseeable that Cope would be assaulted by Sipes. The defendants contend that this claim is barred by state sovereign immunity, as provided in 1 Pa. Cons. Stat. Ann. § 2310.

> [T]he proper test to determine if a Commonwealth employee is protected from liability pursuant to 1 Pa. Cons. Stat. Ann. § 2310 and 42 Pa. Cons. Stat. Ann. § 8522 is to consider whether the Commonwealth employee was acting within the scope of his or her employment; whether the alleged act which causes injury was negligent and damages would be recoverable but for the availability of the immunity defense; and whether the

act fits within one of the nine exceptions to sovereign immunity.

*Brautigam v. Fraley*, 684 F. Supp. 2d 589, 593 (M.D. Pa. 2010) (quoting *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992)) (alteration in original).

Statutory sovereign immunity "applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting within the scope of their duties.'" *Id.* (quoting *Larsen v. State Emps.' Ret. Sys.*, 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008). "Conduct of an employee is within the scope of employment if 'it is of a kind and nature that the employee is employed to perform; [and] it occurs substantially within the authorized time and space limits . . . .'" *Id.* (quoting *Velykis v. Shannon*, No. 1:06-cv-0124, 2006 WL 3098025, at *3–*4 (M.D. Pa. Oct. 30, 2006)) (alterations in original); *see also Mitchell v. Luckenbill*, 680 F. Supp. 672, 682 (M.D. Pa. 2010) ("Even where a plaintiff asks for monetary damages against a [state employee] in his individual capacit[y], sovereign immunity applies."). "Sovereign immunity applies to intentional and negligent torts." *Mitchell*, 680 F. Supp. at 682.

Cope has asserted a state-law claim of simple negligence against the defendants. Each of these defendants is an employee of the state

department of corrections, and it is beyond dispute that their relevant conduct was within the scope of their employment as state prison officials.

None of the nine enumerated exceptions to statutory sovereign immunity applies to the facts alleged in this action. These exceptions include: (1) the operation of a motor vehicle in the control or possession of a Commonwealth party; (2) medical-professional liability against a Commonwealth party; (3) the care, custody, or control of personal property in the possession of a Commonwealth party; (4) Commonwealth-owned real property; (5) personal injury caused by potholes and other dangerous conditions caused by natural elements to highways under the jurisdiction of a Commonwealth agency; (6) the care, custody, or control of animals in the possession of a Commonwealth party; (7) certain state liquor store sales; (8) acts by members of the Pennsylvania National Guard; and (9) the manufacture or use of toxoids or vaccines under certain conditions. 42 Pa. Cons. Stat. Ann. § 8522(b).

Accordingly, it is recommended that summary judgment be granted in favor of the defendants and against the plaintiff with respect to the plaintiff's state-law negligence claim on the ground that the defendants are immune from suit under Pennsylvania state law.

## IV. RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.    The plaintiff's Fourteenth Amendment due process claim be **DISMISSED with prejudice** as legally frivolous and for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), § 1915(e)(2)(B)(ii), § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1);

2.    The defendants' motion for summary judgment (Doc. 52) be **GRANTED in part and DENIED in part**;

3.    The motion be granted and the Clerk be directed to **ENTER JUDGMENT** in favor of the defendants and against the plaintiff with respect to the plaintiff's state-law negligence claim;

4.    The motion be granted and the Clerk be directed to **ENTER JUDGMENT** in favor of defendants Wetzel, Delbalso, Reedy, and Geisinger and against the plaintiff with respect to the plaintiff's Eighth Amendment claim; and

5. The motion be denied and a bench trial be scheduled with respect to the plaintiff's Eighth Amendment claim against defendants Wintersteen, Martin, Toluba, and Kosakowski.

Dated: September 14, 2017        *s/ Joseph F. Saporito, Jr.*
                                 JOSEPH F. SAPORITO, JR.
                                 United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT COPE, #GY8804,

      Plaintiff,

      v.

L.T. REEDY P., et al.,

      Defendants.

CIVIL ACTION NOS. 3:15-cv-01876

(MARIANI, J.)
(SAPORITO, M.J.)

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated  September 14, 2017.   Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: September 14, 2017          *s/ Joseph F. Saporito, Jr.*
                                   **JOSEPH F. SAPORITO, JR.**
                                   **United States Magistrate Judge**